UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-60054
Summary Calendar
_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                        versus

PEDRO RESIO-TREJO,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Texas
_____

(February 8, 1995)

Before GARWOOD, HIGGINBOTHAM and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Pedro Resio-Trejo (Resio) appeals his conviction, following a jury trial, for possession with intent to distribute marihuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). In this appeal, Resio raises two points of error, arguing that the evidence introduced at trial was insufficient to support his conviction and that statements made by the prosecutor during the trial constituted reversible error. We affirm.

## Facts and Proceedings Below

At approximately 10:30 p.m. on April 29, 1993, Resio, heading in a northerly direction on Interstate 35, approached the United

States Border Patrol checkpoint north of Laredo, Texas, driving a truck tractor with no trailer attached. Resio was the sole occupant of the truck. While Border Patrol Agent Stephen Williams (Williams) was asking Resio routine citizenship questions,[1] a Border Patrol canine alerted to the gas tank on the driver's side of the tractor. The Border Patrol agents then sent the tractor to the secondary inspection area. After Resio exited the tractor, the canine handler conducted a search of the entire vehicle. During this search, the dog alerted to the gas tank on the driver's side as well as the gas tank on the passenger's side. When Williams removed the cap of one of the gas tanks and inserted a coat hanger, he felt something solid in the gas tank, which he suspected to be a secret compartment. At this point, the agents began looking for a trap door for loading contraband into the tank.

After visually examining the gas tanks, Border Patrol Agent Marco Antonio Cordero (Cordero) detected the odor of bondo, a sealant used in body repairs of vehicles. As Cordero scratched off the paint on the surface of the tank, a bright pink bondo sealant became visible. Cordero testified that bondo usually fades and discolors as it dries. Given the bright pink color, Cordero surmised that it was a fresh application. The gas tanks, placards, and straps were all painted black. When the agents pounded the tanks with a hammer and screwdriver, the sealant cracked, revealing cut-out trap doors located on the top of each gas tank. After removing the bolts securing the trap doors, the agents discovered

---

[1] Resio truthfully responded that he was a United States citizen.

2

54 bales of marihuana weighing approximately 326.4 pounds.[2]  Drug Enforcement Agency (DEA) Agent Colin McNease (McNease), who was called to the scene at 11:00 p.m. that night, testified that the marihuana seized from the gas tanks appeared to be fresh.

Cordero testified that whoever altered the tanks and concealed the secret compartments "did a very good job."  Border Patrol Agent Mario Ernesto Moreno (Moreno), who had training in welding, testified about the complexity of the alterations and explained that the 115-gallon steel fuel tanks could only be cut with a torch or a grinder.  The secret compartments, each with a 51-gallon capacity, were specially welded to fit inside the gas tanks, leaving less than two-thirds of the original tank capacity for fuel.  Moreno also testified that the persons altering the tanks would have to remove the tanks from the truck, an operation that would require lifting the cab.  In order to avoid the danger of explosion, the tanks would have to be drained, flushed, and dried before construction of trap doors could begin.  Moreno testified that the alterations to the gas tanks would take several days to complete and that the alterations appeared recent.  From the time the canine first alerted to the driver's side gas tank, the search and removal of the marihuana took over one hour. During the search of the vehicle and the subsequent dismantling of the gas tanks, the agents described Resio's demeanor as indifferent and stated that he

---

[2]    Fernando Lozano, a Laredo police officer, testified that the marihuana seized from the tractor would be worth approximately $130,400 in Laredo.  He added that the same marijuana would be worth approximately $195,600 in San Antonio and $228,200 in Houston.  Lozano explained that the higher risks involved in transporting marihuana north drive up the price of the drug.

never asked any questions about what was being done to the tractor. After discovering the marihuana, Resio was arrested, and the truck was impounded.

DEA Agent McNease found various documents under the mattress in the truck's sleeper. At trial, the government used this documentary evidence to show that Resio had been in possession of the truck for the ten months prior to his arrest. Documents introduced at trial showed that a Luis Jaime Rodriguez (Rodriguez) had purchased the truck on February 15, 1992, and obtained title on April 21, 1992. The government introduced documents showing that Rodriguez secured insurance coverage for the truck effective April 14, 1992. The insurance agent who issued the policy testified that the policy was cancelled on May 14, 1992, the date of Rodriguez's death.[3] A driver's daily log book found in the tractor listed the carrier as L.J.W. Trucking, Inc. and the driver as Rodriguez. The entries in this log started on April 28, 1992, and ended on May 3, 1992. A second daily log found in the tractor recorded trips of a driver listed as "Pete Resio" beginning May 16, 1992, for L.J.W. Trucking Services.[4] Beginning on November 24, 1992, the name P.R.T. Express began appearing in the daily entries as the name of the carrier, with Resio still listed as the driver.[5] These daily

---

[3] The government introduced the testimony of a mortician who testified that Rodriguez died on May 14, 1992, in Ciudad Guerrero, Mexico.

[4] The entries of May 16, 1992, through June 5, 1992, list F.J.W. Trucking Services as the carrier. Beginning June 6, 1992, the entries consistently list L.J.W. Trucking Services as the carrier.

[5] The insignia "P.R.T. Express Laredo, Tex." was painted on

4

logs also included daily inspection reports starting on July 1, 1992. There are two months, December 1992 and March 1993, for which the government did not introduce daily logs or inspection reports. However, the government did introduce daily log entries and inspection reports for the period January 1, 1993, to February 28, 1993, and April 1, 1993, to April 29, 1993, the date of Resio's arrest. These daily logs and inspection reports were signed "Pete Resio."

An insurance policy for the truck discovered in it identified Resio as the insured, effective July 20, 1992, with expiration date of July 20, 1993. Another similar insurance policy found in the truck also listed Resio as the insured for the same truck, effective March 18, 1993, and expiring March 18, 1994. Under Texas law, any carrier operating trucks with a gross weight in excess of 26,000 pounds must obtain a permit by registering the truck with the Texas Railroad Commission (TRC) and filing proof of insurance. TRC records reflected that the truck was registered by "Rodriguez" as a private carrier in August 1992 and that this registration was renewed in April 1993. The August 1992 application listed Pedro Resio as the owner of the tractor. The permit number identified on the April 1993 renewal application matched the Interstate Commerce Commission number on the doors of the truck under the "P.R.T. Express" insignia.

In April 1993, Resio applied to the Texas Department of Transportation for a reassignment of the certificate of title. The

_____

both the driver's side and passenger's side doors of the truck.

Texas Certificate of Title application requires the signature of the owner of the vehicle. The application submitted by Resio contained the purported signature of Rodriguez, dated April 16, 1993, as the owner transferring title to the tractor. The government also introduced the taxpayer's copy of a Heavy Vehicle Use Tax Return dated April 13, 1993; the return is signed by Rodriguez. Finally, the agents found an annual vehicle inspection report dated June 15, 1992, and Texas vehicle registration receipts for March 1992 and March 1993, all of which were in Rodriguez's name.

On August 3, 1993, a federal grand jury returned an indictment charging Resio with one count of conspiracy to possess with intent to distribute 326.4 pounds of marihuana in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B) (Count One) and one count of possession with intent to distribute the same marihuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Count Two). After a jury was empaneled and sworn, the government announced that it would proceed only on Count Two and moved to dismiss the conspiracy count. The district court denied Resio's motion for a judgment of acquittal at the close of the government's case. The defense rested without presenting any evidence. On October 19, 1993, the jury found Resio guilty of Count Two. On December 30, 1993, the district court sentenced Resio to sixty-six months of imprisonment and four years of supervised release and imposed a $500 fine and a $50 mandatory special assessment. Resio filed a timely notice of appeal.

**Discussion**

Resio's first point of error is that the government failed to introduce sufficient evidence to support his conviction for possession with intent to distribute approximately 326.4 pounds of marihuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). In reviewing challenges to the sufficiency of the evidence, we review the evidence, whether direct or circumstantial, in the light most favorable to the jury verdict. *United States v. Nguyen*, 28 F.3d 477, 480 (5th Cir. 1994).[6] All credibility determinations and reasonable inferences are to be resolved in favor of the verdict. *Id.* We hold the evidence sufficient if we conclude that a rational trier of fact could have found therefrom the essential elements of the crime beyond a reasonable doubt. *United States v. Villasenor*, 894 F.2d 1422, 1425 (5th Cir. 1990). In making such a determination, "[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982)(en banc), *aff'd on other grounds*, 103 S.Ct. 2398 (1983).

In order to obtain a conviction for possession with intent to

---

[6]    Where a defendant moves for a judgment of acquittal after the government rests but fails to renew the motion after presenting his case, this failure to renew the motion generally constitutes a waiver, and our review of his sufficiency of the evidence claim is normally limited to whether there was a manifest miscarriage of justice. *United States v. Daniel*, 957 F.2d 162, 164 (5th Cir. 1992). However, where, as here, a defendant rests without introducing any evidence, he need not renew the motion for judgment of acquittal in order to preserve his objection to the sufficiency of the evidence. *Clark v. United States*, 293 F.2d 445, 448 (5th Cir. 1961); *see also* 2 Charles A. Wright, *Federal Practice and Procedure* § 463 (1994).

distribute marihuana, the government must prove that Resio knowingly possessed marihuana with the intent to distribute it. *United States v. Carrillo-Morales*, 27 F.3d 1054, 1064 (5th Cir. 1994). Possession may be actual or constructive, and the intent to distribute may be inferred from the quantity and value of the marihuana possessed. *United States v. Casilla*, 20 F.3d 600, 603 (5th Cir.)*; cert. denied*, 115 S.Ct. 240 (1994). In this appeal, Resio challenges only the knowledge element, contending that the government failed to prove that he knew marihuana was concealed in the fuel tanks of the truck he was driving.

Knowledge of the presence of narcotics often may be inferred from the exercise of control over the vehicle in which the illegal drugs are concealed. *United States v. Richardson*, 848 F.2d 509, 513 (5th Cir. 1988) In secret compartment cases, we have generally stated that the knowledge element may not be inferred solely from the defendant's control of the vehicle in which the contraband is hidden because there "is at least a fair assumption that a third party might have concealed the controlled substances in the vehicle with the intent to use the unwitting defendant as the carrier in a smuggling enterprise." *United States v. Diaz-Carreon*, 915 F.2d 951, 954 (5th Cir. 1990). Thus, in order to satisfy the knowledge element in hidden compartment cases, this Court has normally required additional "circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge." *United States v. Anchondo-Sandoval*, 910 F.2d 1234, 1236 (5th Cir. 1990). We have relied on several factors to meet this other-circumstantial-evidence requirement in hidden compartment cases. *See Casilla*, 20

8

F.3d at 606-07 (relying on defendant's nervousness and his implausible explanations for a false bill of lading); *United States v. Shabazz*, 993 F.2d 431, 441-42 (5th Cir. 1993)(relying on, *inter alia,* defendants' nervousness and inconsistent explanations for their stay in Houston); *Diaz-Carreon*, 915 F.2d at 954-55 (relying on defendant's nervousness, inconsistent statements, and implausible story); *Anchondo-Sandoval*, 910 F.2d at 1237 (relying on defendant's contradictory statements to DEA and customs agents).

Resio contends that, because none of the additional factors previously relied on by this Court is present in this case, his knowledge of the presence of the concealed marihuana cannot be inferred merely from his control over the vehicle. Resio argues that he exhibited no signs of nervousness during the encounter at the border checkpoint and that he made no inconsistent or implausible statements to the agents conducting the search. We agree that the knowledge element in hidden compartment cases generally cannot be inferred solely from the defendant's control over the vehicle in which the contraband is concealed. *See United States v. Garza*, 990 F.2d 171, 174 (5th Cir.), *cert. denied*, 114 S.Ct. 332 (1993); *Diaz-Carreon*, 915 F.2d at 954-55. Moreover, it is undisputed that this is a hidden compartment case. However, we find that there is amply sufficient additional circumstantial evidence from which the jury could reasonably infer that Resio knew that the marihuana was concealed in the truck he was driving.

The government introduced documentary evidence at trial that Resio began driving the truck on May 16, 1992, two days after the death of the previous owner. Documentary evidence introduced at

trial also showed that Resio completed daily inspection reports on the truck's condition and made daily log entries. Although the government did not introduce the inspection reports or log entries for December 1992 or March 1993, there is no evidence that Resio did not inspect the truck during these months; moreover, there is no evidence that the truck was in the possession of anyone other than Resio during that time. In April 1993, shortly before his arrest, Resio applied to transfer title of the truck from Rodriguez's name to his own. The jury also had before it evidence that Resio obtained liability insurance for the tractor in his name in July 1992 and again in March 1993. Resio also registered his truck with the TRC in August 1992, listing himself as the owner, and renewed this TRC registration in April 1993. The government introduced evidence that Resio had possession and exclusive control of the truck for the 10 months preceding the discovery of some 326 pounds of marihuana in the hidden compartments. Through the logs and inspection reports, the government showed that Resio was the truck's primary driver and that he frequently inspected the vehicle.[7]

We decline to adopt Resio's argument that the list of additional factors necessary to prove the knowledge element in hidden compartment cases is limited to a defendant's nervousness, implausible explanations, and inconsistent statements, or matters similar or analogous thereto. In the typical hidden compartment

---

[7] For instance, the evidence admitted at trial included daily inspection reports completed by Resio for the following periods: January 1-29, 1993; February 1-28, 1993; April 1-29, 1993.

10

case, the driver disclaims ownership of the vehicle and the government does not disprove the disclaimer. *See United States v. Gibson*, 963 F.2d 708, 711 (5th Cir.1992)(defendant claimed that she borrowed car from aunt's boyfriend); *United States v. Pineda-Ortuno*, 952 F.2d 98, 103 (5th Cir.), *cert. denied*, 112 S.Ct. 1990 (1992)(both defendants denied ownership of vehicle with hidden compartment containing cocaine); *Diaz-Carreon*, 915 F.2d at 952 (driver told agents he was driving truck to New Mexico for its owner); *Anchondo-Sandoval*, 910 F.2d at 1235 (driver told agents that he was driving the car across the border for the brother of a friend). In such cases, the government has not introduced evidence of the defendant's exclusive control and possession of the vehicle for a long period of time preceding the discovery of the concealed contraband.

In other cases, however, we have observed that the defendant's ownership and control over the vehicle constitutes evidence showing that the defendant knew the vehicle contained illegal drugs. *See, e.g., Garza*, 990 F.2d at 174 (listing other circumstantial evidence showing that defendant knew of the concealed cocaine such as "Garza's nervousness, his control and ownership of the truck containing the cocaine, the large amount of cocaine, the false bill of lading. . ."). In *United States v. Olivier-Becerril*, 861 F.2d 424 (5th Cir. 1988), Border Patrol agents found seventy-nine kilograms of cocaine in a hidden compartment in the trunk of a car driven by the defendant. Addressing the defendant's argument that the government failed to prove the knowledge element, this Court reaffirmed the rule that normally control of the vehicle, standing

11

alone, does not constitute sufficient proof that the defendant knew the concealed drugs were in the car. *Id.* at 427. The Court, however, held that there was sufficient evidence that the defendant knew the cocaine was in the car based on several factors. In addition to the defendant's nervousness, the Court in *Olivier-Becerril* noted that "[t]he repair receipt found in the car reflected that Olivier was in possession of the vehicle one week prior to the search, suggesting that he was in possession when the hidden compartment was built one to three days prior to his arrest." *Id.* In this case, the government introduced evidence that Resio was in possession of the truck for the ten months preceding his arrest. Furthermore, the government presented testimony that the alterations to the vehicle had been done recently, and DEA Agent McNease testified that the marihuana seized from Resio's truck appeared to be fresh. The evidence of the recent alterations and the fresh marihuana, considered together with the evidence of Resio's possession and control of the truck in the ten months preceding his arrest, weigh in favor of the jury's verdict and provide a sufficient basis for the inference that Resio knew the marihuana was concealed in his truck.

Moreover, we find that there is additional circumstantial evidence that convinces us that Resio was not an "unwitting . . . carrier in a smuggling enterprise." *Diaz-Carreon*, 915 F.2d at 954. Although Resio did not appear nervous or provide implausible explanations for his travels, we note that his calm demeanor and indifference while the agents dismantled the gas tanks on his truck provide additional "circumstantial evidence that is suspicious in

12

nature or demonstrates guilty knowledge." *Id.* at 954. Further, the government introduced evidence that the secret compartments reduced the fuel capacity of each tank by one-third. Because the evidence showed that Resio drove the truck for almost one year, the jury could rationally infer that Resio would notice such a dramatic decrease in the fuel capacity of his truck. Finally, we note that Border Patrol Agent Williams discovered the secret compartments by simply inserting a coat hanger in the gas tank. Given the ease with which Williams discovered the hidden compartments, the jury could reasonably infer that Resio would have made a similar discovery during his daily inspections or while refueling his truck. In sum, we hold that all this evidence, taken in conjunction with the evidence of Resio's ownership of and control over the vehicle in the ten months preceding his arrest, provide a sufficient basis for a rational jury to infer that Resio knew the marihuana was concealed in the gas tanks. We note that we find the alternative explanation for what happened incredulous: that someone would take Resio's truck and, without his knowledge, spend several days constructing secret compartments in the gas tanks, load these compartments with over $130,000 worth of marihuana, and return the truck to him.

Resio's second point of error on appeal is that certain statements made by the prosecutor during her opening and closing statements amounted to reversible error. Because Resio did not raise these objections at trial, our review is limited to plain error. *United States v. Calverley*, 37 F.3d 160, 162 (5th Cir. 1992)(en banc). In order to be eligible to gain relief under this

13

standard, Resio must show that (1) the district court deviated from a legal rule, (2) the error was clear or obvious, and (3) the error affected substantial rights and influenced the district court proceedings. *United States v. Olano*, 113 S.Ct. 1770, 1777-78 (1993).

Resio first complains that the prosecutor told the jury that the construction of the secret compartments in the gas tanks was the work of professionals, assertedly thereby implying that Resio was experienced in the business. The comment actually made is adequately supported by the evidence. At trial, Border Patrol Agent Cordero testified that the persons who built the secret compartments did a "very good job." In addition, Border Patrol Agent Moreno testified about the dangers and complexities involved in building such secret compartments in the fuel tanks of a truck. Because the evidence adequately supports this comment, we hold that it does not constitute error, much less plain error.

Resio also challenges the prosecutor's statement in her closing argument that drug dealers would not turn over so much marihuana to a person whom they did not trust, thereby implying that he was a trusted member of the underworld. Because Resio has not shown that this comment amounts to plain error, we reject this argument. Finally, Resio complains that the prosecutor labelled him a forger, pointing to the following statement during the prosecutor's closing argument: "[Resio] also has copies of some obviously forged documents." We cannot accept Resio's contention that the prosecutor called him a forger; rather, we find that the prosecutor merely stated that Resio had some forged documents in

14

his possession.  Because Resio cannot show that this statement rises to the level of plain error, we reject this argument as well.

## Conclusion

For the foregoing reasons, Resio's conviction is

AFFIRMED.

15