**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 98-50828

_____

UNITED STATES OF AMERICA,

                          Plaintiff-Appellee,

versus

LUIS RAMON ALMANZA-CERDA,

                          Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
(DR-97-CR-428)

December 22, 1999

Before JOLLY, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Luis Ramon Almanza-Cerda ("Almanza") appeals his conviction for possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a), citing insufficient evidence to sustain the conviction. We affirm.

While en route to the United States from Mexico in his late-model Chevrolet pickup truck, Almanza was stopped at the Eagle Pass port of entry, where he was confronted by two customs inspectors. Custom Inspector Schussler "took the normal declaration" from Almanza. Almanza

_____

[*] Pursuant to 5ᵀᴴ CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

told Schussler that he was coming from Piedras Negras, a border town just across the river from Eagle Pass, that he was making the trip to Eagle Pass to go shopping, and that he had nothing to declare.

Meanwhile, Customs Inspector Perales began a physical inspection of the vehicle. The truck had "saddle" gas tanks on both sides. Perales hit the side of one tank with a hammer and it produced a thud, which Perales identified as an indicator that something solid was contained within the tank. Perales than examined the tank visually and identified signs of recent tampering. During this inspection, the truck stalled. Schussler asked Almanza if he was out of gas, and Almanza responded that he was going to Eagle Pass to buy a new fuel pump. Almanza then successfully re-started the truck.

The inspectors then directed Almanza to the secondary inspection area, where Inspector Ramos asked Almanza who owned the truck. Almanza replied that it was his. During a canine search of the vehicle, the dog alerted to the gas tanks. The inspectors proceeded to remove the tanks from the truck; in the process, one inspector observed that the bolts connecting the tanks to the truck had been tampered with and that fresh mud had been recently placed there. Opening the tanks revealed large metal boxes which had been inserted before the tanks were welded shut. The boxes were so large that, as Inspector Perales testified, "barely any gasoline" could fit within the tanks. The boxes contained a total of 149 pounds of marijuana. Almanza was tried and convicted of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a) and sentenced to forty-one months imprisonment.

To obtain a conviction for possession with intent to distribute marijuana, the government must prove beyond a reasonable doubt that Almanza "(1) knowing[ly] (2) possess[ed] the drugs in question

(3) with intent to distribute them." *United States v. Ortega Reyna*, 148 F.3d 540, 543-44 (5th Cir. 1998). As he did at trial, on appeal Almanza contests only the element of knowledge, asserting that the government produced insufficient evidence that he knew drugs were in the truck. We review the record in the light most favorable to the verdict, asking only "if a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *United States v. Ramos-Garcia*, 184 F.3d 463, 465-66 (5th Cir. 1999).

Generally, we allow juries to infer that a defendant has knowledge of the presence of drugs when the defendant has exercised control over the vehicle containing the contraband. *See Ortega Reyna*, 148 F.3d at 544. However, in cases where the contraband is contained in "hidden compartments" within a vehicle, "control over the vehicle alone is not sufficient to prove knowledge." *United States v. Garza*, 990 F.2d 171, 174 (5th Cir. 1993); *see also United States v. Pennington*, 20 F.3d 593, 598 (5th Cir. 1994) (finding drugs "hidden" when not "clearly visible or readily accessible"). We require additional evidence in these cases because juries should entertain the "fair assumption that a third party might have concealed the controlled substances in the vehicle with the intent to use the unwitting defendant as the carrier in a smuggling enterprise." *United States v. Resio-Trejo*, 45 F.3d 907, 911 (5th Cir. 1995).

Recognizing that "[t]he knowledge element in a possession case can rarely be established by direct evidence," *Garza*, 990 F.2d at 174, we have identified many circumstantial factors which, combined with control over the vehicle, can be sufficient to prove the defendant's requisite "guilty knowledge." *See Ortega Reyna*, 148 F.3d at 544 & nn. 11-19 (listing factors and citing cases). The government argues that several circumstantial factors present in this case constitute sufficient evidence to infer Almanza's knowledge. We agree. First, Almanza admitted his *ownership*, not

merely his possession, of the truck; he claimed he had purchased it one month before the event in question.[1]  This fact, somewhat unusual in hidden compartment cases, supports the inference that Almanza knew the truck contained contraband.  *See United States v. Williams-Hendricks*, 805 F.2d 496, 501 (5th Cir. 1986) ("As the owner of the truck [in which gas tanks had been modified to house marijuana], [the defendant] had control over who used it an how it was used."); *cf. Resio-Trejo*, 45 F.3d at 912 ("In the typical hidden compartment case, the driver disclaims ownership of the vehicle.").

Second, Inspector Perales testified, and the exhibits introduced by the government showed, that "barely any gasoline" could fit in the tanks.  In an analogous case, we held that when there is evidence that a secret compartment has greatly decreased a vehicle's fuel capacity, a jury could "rationally infer that [a defendant] would notice such a dramatic decrease in the fuel capacity of his truck." *Resio-Trejo*, 45 F.3d at 913.  While the facts of *Resio-Trejo* are not identical to the facts of the case at bar, the additional evidence presented by the government) ) Almanza's previous ownership of an automobile body shop and his statement that he was going to Eagle Pass to buy a fuel pump) ) makes the government's argument equally compelling here.

Third, 149 pounds of marijuana were found in Almanza's gas tanks, having an aggregate street value of over $112,000.  The jury reasonably could have inferred that it was extremely unlikely that a third party would entrust a product that valuable to an unknowing carrier, hoping to recover it across the border.  *See Ramos-Garcia*, 184 F.3d at 466 (agreeing with the government's argument that "it is unreasonable to believe that [the defendant] would have been entrusted with a large quantity

---

[1]     The record is devoid of any evidence that the truck had been stolen or borrowed from Almanza at any point during the one month he owned it.

of drugs without his knowledge"). As in *Resio-Trejo*, in this case "we find the alternative explanation for what happened incredulous: that someone would take [Almanza's] truck and, without his knowledge, spend several days constructing secret compartments in the gas tanks, load these compartments with over $130,000 worth of marijuana, and return the truck to him." *Resio-Trejo*, 45 F.3d at 913.

Viewing the evidence as a whole in a light most favorable to the verdict, we hold that there was sufficient evidence for the jury to have concluded that Almanza knowingly possessed the marijuana hidden within the secret compartments of his truck's gas tanks. Accordingly, we AFFIRM Almanza's conviction.