**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

No. 98-60464

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CLARENCE ERIC JACKSON a/k/a TUPAC,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Mississippi
(97-CR-17-1)

---

December 17, 1999

Before JONES and WIENER, Circuit Judges, and WALTER, District Judge.[*]

Walter, District Judge:[**]

Defendant-Appellee Clarence Eric Jackson, a/k/a/ Tupac ("Jackson") raises numerous

points of error on appeal. Jackson asserts: (1) the district court imposed an improper sentence as

it unconstitutionally relied on information in his pre-trial psychiatric evaluation and improperly

---

[*]District Judge of the Western District of Louisiana, sitting by designation.

[**] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

applied the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.");[3] (2) the photo

array identification and in-court identification of him were constitutionally infirm and any evidence

concerning them should have been excluded; (3) the district court erred in permitting testimony by

his co-defendant Darrious Jackson ("Darrious") and in restricting his impeachment of

Government witnesses; (4) the district court erred in admitting various items of evidence; (5) the

jury was improperly constituted, thus denying Jackson his Fifth and Sixth Amendment rights to a

fair trial by a fairly constituted jury; and (6) the carjacking charge against him was

unconstitutional.  Finding no reversible error, we affirm the ruling of the district court.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In December 1996 in Monticello, Mississippi, Darrious and another individual kidnapped

two fifteen-year-old cousins at gunpoint from a restaurant parking lot and carjacked their vehicle.

The girls were forced to accompany their abductors to New Orleans, Louisiana.  Along the way,

Darrious pistol whipped one victim, and both victims were sexually assaulted multiple times.  En

route, the abductors stopped for cigarettes at a Sun, Louisiana, convenience store where an

internal surveillance camera captured Darrious' image.  In New Orleans, the men locked the girls

in the trunk of the car and abandoned it.  The girls escaped.

On June 26, 1997, Jackson and his cousin Darrious were indicted on two counts of kidnaping

in violation of 18 U.S.C. § 1201(a)(1) and one count of carjacking in violation of 18 U.S.C. § 2119.

Darrious pleaded guilty to the kidnaping charges, and in exchange for naming Jackson as his

companion and testifying against him, the carjacking count was dismissed.  He received a reduced

sentence for the kidnaping charges.  Jackson pleaded not guilty at arraignment, but subsequently

_____

[3]United States Sentencing Commission Guidelines Manual (1997).

announced his intention to plead guilty. At the plea colloquy, Jackson revealed that he had been hospitalized for paranoid schizophrenia in 1996. He responded to questions in a fashion that caused the court to advise Jackson of the legal implications of mental conditions with respect to competence and substantive guilt or innocence. Jackson terminated his guilty plea. The court ordered a psychiatric examination to determine Jackson's sanity on the date of the crime (on the request of Jackson's counsel) and to determine Jackson's competency to stand trial (on the request of the Government).

In February 1998, the court found Jackson competent to stand trial. Jackson's pre-trial motion to suppress evidence of a photo identification and to prohibit an in-court identification of him was overruled. The court also denied Jackson's motion to dismiss the carjacking count on constitutional grounds. In April 1998, a jury trial was held wherein Jackson was found guilty on all counts. The chief factual issue was whether Darrious' counterpart on the day of the crimes was Jackson. Jackson adduced testimony from his mother, his brother, and an unrelated person that he was in New Orleans at the time of the girls' abduction, therefore, he could not have been Darrious' counterpart. The court sentenced Jackson to life imprisonment on the kidnaping counts and to 300 months (the statutory maximum) on the carjacking count. In determining his sentence, the court considered information in Jackson's pre-trial psychiatric evaluation.

## II. DISCUSSION

Consideration of Pre-Trial Psychiatric Evaluation in Sentencing

This court reviews a district court's application of the sentencing guidelines de novo and the court's findings of fact for clear error.[4] In Estelle v. Smith,[5] the Supreme Court held that where the defendant had not introduced psychiatric evidence in his case, a psychiatrist who examined the defendant pursuant to a court-ordered examination, without warning him that what he said could be used against him in a capital sentencing proceeding, could not testify against him in such a proceeding.[6] "[D]iscern[ing] no basis to distinguish between the guilt and penalty phases of . . . [the] trial so far as the protection of the Fifth Amendment privilege is concerned," the Court held that admission of the psychiatrist's testimony violated the defendant's Fifth Amendment rights.[7] The Court similarly concluded that the psychiatrist's testimony violated the defendant's Sixth Amendment right to the assistance of counsel, as (1) defense counsel "were not notified in advance that the psychiatric examination would encompass the issue of [the defendant's] future dangerousness"; (2) the defendant was denied the assistance of counsel in determining whether to submit to the examination and "to what end the psychiatrist's findings could be employed."[8] The Court noted that "a different situation arises where a defendant intends to introduce psychiatric evidence at the penalty phase"[9]

---

[4]United States v. Morrow, 177 F.3d 272, 300 (5th Cir. 1999).

[5]451 U.S. 454 (1981).

[6]Id. at 461-69, 471.

[7]Id. at 462-63, 468.

[8]Id. at 470-472.

[9]Id. at 472.

4

Jackson asserts the district court violated his constitutional rights, as recognized in Estelle and its progeny,[10] by sentencing him to life in prison on the basis of information obtained from a court-ordered pre-trial psychiatric examination. He maintains the court's chief basis for imposing a life sentence was "future dangerousness" information contained in the psychiatrist's report, specifically, Jackson's statements concerning his prior conduct and fantasies. He acknowledges that his counsel requested the examination, but maintains he did not waive his rights, as he did not offer any psychiatric evidence, did not put his mental state at issue, and did not request mitigation of his sentence based on his mental state. Moreover, Jackson points out that his counsel requested the examination for the limited purpose of ascertaining whether he could meet the substantive criteria for the sanity defense suggested to him by the court, not to determine future dangerousness issues at sentencing. Jackson submits that he was never Mirandized as mandated by Estelle. Jackson also relies on Federal Rule of Criminal Procedure Rule 12.2(c), which prohibits the use of statements made in a psychiatric examination "except on an issue respecting mental condition on which the defendant has introduced testimony."

The Government contends the prohibition does not apply in formulating a just sentence. The Government maintains an extension of the testimonial bar in Estelle and its progeny to the court's inherent authority to craft and pronounce a sentence is incorrect. The Government argues that U.S.S.G. § 1B1.4, not Estelle, is the controlling factor in confecting a sentence. Section 1B1.4 provides, in pertinent part,

---

[10]See e.g. Vanderbilt v. Collins, 994 F.2d 189, 198-99 (5th Cir. 1993) (holding that the Government's use of psychiatric evidence on the issue of future dangerousness during the penalty phase violated the defendant's Fifth and Sixth Amendment rights, in light of the failure to provide the defendant with Miranda warnings before the examination and the failure to inform defense counsel that the examination would encompass the issue of future dangerousness).

"[i]n determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, <u>without</u> <u>limitation</u>, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." The Commentary to 1B1.4 states that "Congress intended that no limitation would be placed on the information that a court may consider in imposing an appropriate sentence under the future guideline sentencing system." Furthermore, "information that does not enter into the determination of the applicable guideline sentencing range may be considered in determining whether and to what extent to depart from the guidelines." Title 18 U.S.C. § 3661 specifically states that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

The court was within its discretion in considering the information contained in Defendant's psychiatric report. Sentencing judges have considered a wide variety of information inadmissible at trial, including hearsay,[11] illegally obtained evidence[12] and evidence of other offenses of which a defendant has been acquitted.[13] Accordingly, district courts enjoys wide latitude in the information it may consider during sentencing. Here, the district court properly considered information in

_____

[11]See <u>United States v. Beal</u>, 960 F.2d 629, 634 (7th Cir. 1992) (holding that a sentencing judge is free to consider a wide variety of information that would be inadmissible at trial, including hearsay).

[12]See <u>United States v. McCrory</u>, 930 F.2d 63, 68-69 (D.C. Cir. 1991) (holding that evidence seized in a warrantless, illegal search could be used to calculate the defendant's base offense level under the Guidelines, without regard to the admissibility of that evidence at trial).

[13]See <u>United States v. Watts</u>, 519 U.S. 148 (1997) (holding that the sentencing court may consider conduct of which defendant has been acquitted, so long as that conduct has been proved by preponderance of evidence).

Defendant's psychiatric report in determining his sentence. Moreover, the district court stated that it would have imposed the same sentence had it not considered the psychiatric evaluation.[14]

Application of the Sentencing Guidelines

This Court "uphold[s] a sentence imposed pursuant to the guidelines unless it is imposed in violation of law, is the result of incorrect application of the guidelines, or is an unreasonable departure from the applicable guideline range."[15] "We review determinations of legal principles de novo and factual findings for clear error."[16] A de novo standard of review applies to the district court's finding that prior convictions were not "related" for purposes of determining whether convictions can be counted as prior convictions under the career offender provision of the Guidelines.[17]

Application of the Guidelines by the district court resulted in a total offense level of 39 and a criminal history category of IV, with an imprisonment range of 360 months to life. Finding it necessary to protect society from Jackson, the court imposed a life sentence. To arrive at the total offense level, the court applied U.S.S.G. § 2A4.1(b)(7) which provides that if a defendant kidnaps a victim to facilitate commission of another offense, he can be sentenced under the guideline for the other offense.[18] Under U.S.S.G. § 2A3.1, a base offense level of 27 is assigned for criminal sexual

----

[14] We have considered Mitchell v. United States, 526 U.S. 314 (1999), and find it inapposite.

[15] United States v. Anderson, 5 F.3d 795, 798 (5th Cir. 1993).

[16] Id.

[17] United States v. Garcia, 962 F.2d 479, 481 (5th Cir. 1992).

[18] See U.S.S.G. § 2A4.1(b)(7). ("If the victim was kidnapped, abducted, or unlawfully restrained during the commission of, or in connection with, another offense or escape therefrom, or if another offense was committed during the kidnapping . . ., increase to -- (A) the offense level from the Chapter Two offense guideline applicable to that other offense if such offense guideline

7

abuse. The district court then made the following offense level increases: 4 levels as the offense was committed by means set forth in 18 U.S.C. § 2241(a) or (b) (including the use or display of a dangerous weapon); 2 levels as the victims were not sixteen years old; 2 levels as the victims sustained serious bodily injury;[19] and by 4 levels as the victims were abducted.[20] Ultimately, the court calculated a total offense level of 37 for counts one and two.

As to count three (carjacking), the court found that a base offense level of 20 applied pursuant to U.S.S.G. § 2B3.1. Next, the court made the following increases: (1) because a firearm was otherwise used,[21] a 6-level increase; (2) because the victims sustained serious bodily injury, a 4-level increase; (3) because the victims were physically restrained to facilitate the offense, a 4-level increase;[22] (4) because the offense involved carjacking, a 2-level increase. The adjusted offense level

---

includes an adjustment for kidnapping, abduction, or unlawful restraint, or otherwise takes such conduct into account; or (B) **4** plus the offense level from the offense guideline applicable to that other offense, but in no event greater than level **43**, in any other case."). See also United States v. Jackson, 978 F.2d 903, 913 (5th Cir. 1992).

[19]The Guidelines define "serious bodily injury" as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation. In addition, 'serious bodily injury' is deemed to have occurred if the offense involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241 or § 2242 or any similar offense under state law." U.S.S.G. § 1B1.1, Application Note 1(j).

[20]See U.S.S.G. § 2A3.1(a), (b)(1)-(5).

[21]The Guidelines define "otherwise used" as "conduct that did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." U.S.S.G. § 1B1.1, Application Note 1(g).

[22]See U.S.S.G. § 2B3.1(b)(2)-(5). Although the court stated that it applied a 4-level increase because the victims were physically restrained, it appears the court made that reference in error and intended to apply the increase because the victims were abducted to facilitate the offense. Only a 2-level increase is applied for physical restraint. See U.S.S.G. § 2B3.1(b)(4).

for the carjacking count was 36. The court grouped the counts together and determined a combined offense level of 39.[23]

Jackson contends the court misapplied the guidelines by: (1) using the sexual abuse guideline under § 2A3.1 rather than the kidnapping guideline under § 2A4.1 to calculate the base and adjusted offense levels; (2) applying the enhancement for otherwise using a firearm; (3) applying the enhancement for serious bodily injury to the victims; (4) assigning eight criminal history points under § 4A1.2(d)(2)(B) and § 4A1.1(a)(2), resulting in an incorrect criminal history category of IV; and (5) imposing a life sentence.

Jackson proposes the kidnapping counts be assessed under the kidnapping guideline, U.S.S.G. § 2A4.1, which would have resulted in the carjacking guideline, U.S.S.G. § 2B3.1, being the main guideline into which the kidnapping counts would have been grouped. This, he contends, would have resulted in a total offense level of no more than 38. Jackson urges that his kidnapping conviction was improperly sentenced under the sexual abuse guideline, as "the kidnapping/carjacking was undertaken primarily to secure transportation to New Orleans" and "the sexual victimization of the [girls] was the means to that end." He urges that the sexual victimization was a crime of opportunity that could be fully accounted for by including an enhancement for sexual abuse in the kidnapping guideline itself.

Jackson contends the court erred in concluding he did anything more than brandish or display his weapon during the crime.[24] He insists he did nothing more than show the gun to the victims in

_____

[23]See U.S.S.G. §§ 3D1.2, 3D1.4.

[24]The term "brandished" means "the weapon was pointed or waived about, or displayed in a threatening manner." U.S.S.G. § 1B1.1, Application Note 1(c). "Otherwise used" is defined as "conduct that did not amount to the discharge of the firearm but was more than brandishing,

9

a threatening manner. Jackson asserts that the court erred in determining the physical injury to the victims was "serious bodily injury." Instead, Jackson argues the injuries were more in line with the normal injuries resulting from a female's first experience with sexual intercourse, making it simply "bodily injury." Finally, he contends the court erred in calculating his criminal history points. He urges that the court should not have treated a "juvenile joyride" the same as a felony. Jackson further contends the district court should not have treated two prior Louisiana convictions that were consolidated for plea and sentencing purposes as separate offenses in terms of his federal sentencing.[25]

The Government asserts the court properly applied the sexual abuse guideline, noting that kidnaping may facilitate sexual abuse.[26] It urges that "[t]o say that the facilitated crime was merely for purposes of obtaining transportation . . . flies in the face of the Record" given the "five savage rapes of [the girls] over a period of about 3 ½ hours." As to the enhancement for "otherwise using" a firearm, the Government insists the court properly applied this enhancement since the weapons were used to facilitate the carjacking and rapes. The Government highlights that Jackson pointed a rifle at the girls and threatened to "blow [one girl's] guts out" as he and Darrious committed the subject

---

displaying, or possessing a firearm or other dangerous weapon." Id. at Application Note 1(g).

[25]See United States v. Huskey, 137 F.3d 283, 288 (5th Cir. 1998) ("[W]hen factually distinct offenses are charged in the same criminal information under the same docket number, those offense have been 'consolidated' . . . and are therefore related. Sentences flowing from such consolidated cases should not be counted separately under §§ 4A1.1-.2.").

[26]See United States v. Galloway, 963 F.2d 1388, 1391 (10th Cir. 1992) (holding that the district court properly applied the guideline for sexual abuse rather than the more lenient guideline for kidnaping in sentencing the defendant when the victim was kidnapped to facilitate sexual abuse and that this result is not changed by the fact that the defendant also committed another offense in connection with the kidnaping).

10

crimes. Darrious used a revolver to strike one girl in the face to subdue her for rape. The Government correctly points out that both victims suffered serious bodily injury, making enhancement for such injury entirely proper. The Guidelines plainly provide that serious bodily injury is deemed to have occurred if the offense involved criminal sexual abuse conduct.[27] Finally, the Government asserts the court correctly assessed Jackson's criminal history points.

The district court properly declined to treat a juvenile adjudication for automobile theft and flight from officers as a "joyride." Further, the district court correctly refused to treat two prior, unrelated convictions for criminal events occurring over six months apart, but that were consolidated for sentencing, as separate.[28] Under U.S.S.G. § 4A1.2, Application Note 3, "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that . . . were consolidated for trial or sentencing."

---

[27]See U.S.S.G. § 1B1.1, Application Note 1(j). The Government points out that one victim suffered a laceration to her posterior fourchette, two smaller tears to her hymenal tissue, and swelling. The other victim suffered a small tear in her posterior fourchette, small abrasions and first-degree lacerations on her labia majora, fresh blood, a hematoma, and bruising to her hymenal ring.

[28]On May 29, 1996, Jackson was charged with False Imprisonment with a Weapon; Unauthorized Entry into a Dwelling; and Aggravated Assault. On February 4, 1997, Jackson was charged with two counts of 1st Degree Armed Robbery. These charges did not involve common victims or otherwise result from the same criminal transaction, nor were they consolidated for trial. The Court does not treat factually distinct offenses as "related" simply because (1) the sentences were issued on the same day, see United States v. Metcalf, 898 F.2d 43, 46 (5th Cir. 1990), or because (2) the court imposed concurrent sentences, see United States v. Flores, 875 F.2d 1110, 1114 (5th Cir. 1989). Accordingly, the district court did not err in treating the offenses as non-related for purposes of sentencing.

11

We hold there was no error in the district court's application of the Guidelines. The court properly applied the sexual abuse guideline under § 2A3.1.[29] The court did not abuse its discretion in finding that Jackson "otherwise used" a firearm in the commission of the offenses. As the record indicates, Jackson and Darrious used firearms to facilitate the crimes at hand. Additionally, the court properly enhanced the base offense level for serious bodily injury. The Guidelines make it clear that such an enhancement is proper, especially considering the extent of the victims' injuries. The court did not err in calculating Jackson's criminal history points. Finally, the court was also within its discretion to impose a life sentence, the maximum sentence within the Guideline range. Photographic and In-Court Identification

Whether identification evidence is admissible at trial is a mixed question of law and fact subject to de novo review, but the district court's underlying factual findings are reviewed for clear error.[30] "[T]he Fifth Circuit views the evidence presented at a hearing on a motion to suppress in the light most favorable to the prevailing party."[31]

"A conviction based upon an eyewitness identification at trial following a pretrial photographic identification must be set aside 'only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'"[32] The court considers two factors to determine the admissibility of identification

---

[29]See Anderson, 5 F.3d at 798-99. (upholding the district court's sentence wherein the court applied the U.S.S.G. § 2A4.1(b)(7) kidnaping crossover reference which led it to apply the U.S.S.G. § 2A3.1 sexual abuse guideline).

[30]United States v. Fletcher, 121 F.3d 187, 194 (5th Cir. 1997).

[31]United States v. Nichols, 142 F.3d 857, 865 (5th Cir. 1998).

[32]Fletcher, 121 F.3d at 194.

12

evidence.[33] First, whether the photographic array was impermissibly suggestive,[34] and, if so, whether "the display posed a very substantial likelihood of irreparable misidentification" based upon the totality of the circumstances.[35] In determining the reliability of the identification under the totality of the circumstances standard, the court should consider:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.[36]

One victim identified Jackson during a photo identification in March 1997, three months after the incident in question. The court permitted the girl and an FBI agent to testify regarding this identification and admitted the photo array into evidence. The girl reaffirmed her identification by picking out Jackson's photo from a spread, and she identified Jackson in the courtroom. Jackson objected to all such identification testimony and to the introduction of the photo array.

Jackson asserts the victim's photo spread and in-court identification were constitutionally infirm and that no evidence concerning them should have been admitted. He contends the photographic identification procedure was impermissibly suggestive, giving rise to a substantial likelihood of irreparable misidentification. Thus, he maintains the photo identification and the in-court identification should be excluded.

---

[33]See id.

[34]See id.

[35]Id.

[36]Id.

13

Jackson points out that (1) he was t he only individual whose photograph had a distinctive bright pink or red coloring to it; (2) although there were six people in the photo array, only two had characteristics in conformity with the victims' description of Darrious' accomplice; (3) the victims had little opportunity actually to view their assailants; (4) the victims were exposed to "wanted posters" of Jackson between the time of the crime and the identification; and (5) due to the victims' restricted social circle and lack of experience in the world, they would be particularly poor at discerning subtle distinctions among facial characteristics of African-American men. Jackson further contends that the victim's recollection was improperly bolstered by a pre-trial "dress rehearsal coaching session" in which she was again shown the photo array. Based on the foregoing, Jackson insists that the Biggers factors[37] were compromised, thereby shifting the burden of proof to the Government to establish the identification was not suggestive, or if suggestive, did not irreparably taint an in-court identification. Jackson contends the Government fell short of satisfying this burden.

The Government insists there was no error; rather, Jackson's contentions make unwarranted leaps of faith in postulating that the victim was disqualified from making an in-court identification. The Government maintains that (1) Defendant fails to suggest any way in which the photograph array was impermissibly suggestive — i.e., in ways such as clothing, background, skin tones, facial features, or facial hair (and Jackson did not object to a discordant background color in his photograph until trial); (2) the only evidence of "wanted posters" was a composite drawing of Jackson published in Lawrence County; (3) the victim never testified she had seen any such photographs or drawings (and was in fact told by the FBI to avoid exposure to any such likeness of Jackson); and (4) the Government's alleged "coaching" of the victim was nothing more than standard witness preparation.

---

[37]Neil v. Biggers, 409 U.S. 188, 199 (1972).

14

Moreover, the Government points out that the court required a proffer setting forth the entire identification process prior to permitting the in-court identification. It was proffered that: (1) the victim met with the FBI and the prosecutor in Monticello on March 17, 1997; (2) the FBI agent did not tell her that Jackson's photo was contained in the spread; (3) no one told her that she should identify anyone in the photos; (4) no reward or inducement was offered to her to identify anyone; and (5) she identified Jackson from the photo spread. A similar proffer was made as to when she was shown a series of photographs the day before trial. The court also undertook a series of questions, eliciting much the same information. The Court established she had not noticed any pinkish cast in any of the photographs, and thus was not influenced by that factor in her identification of Jackson. The Government submits that in the presence of the jury, her answers were entirely consonant with her testimony during the proffer. We adopt the arguments of the Government and find the district court did not err in admitting the photo array identification into evidence or permitting the in-court identification of Jackson.

Witness Testimony

This Court reviews limitations on the scope of cross-examination for clear abuse of discretion.[38] "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive

---

[38]United States v. Campbell, 49 F.3d 1079, 1085 (5th Cir. 1995).

15

or only marginally relevant."[39]  As such, "[t]he relevant inquiry is whether the jury had sufficient information to appraise the bias and motives of the witness."[40]

Jackson contends the court erred in permitting Darrious to testify[41] and in restricting his cross-examination of Government witnesses.  Jackson sought to impeach Darrious' testimony that Jackson was his mentor in criminal activity by establishing that Darrious' criminal companions were generally persons other than Jackson.  The court prohibited Jackson from questioning Darrious or Jerry Ray McGee on this matter.  Jackson also sought to establish bias and motive on the part of McGee based on evidence that the FBI had reports that McGee had committed firearm offenses which it chose not to investigate.  The court prevented Jackson from adducing this evidence from the FBI agent, the witness who provided this information to the FBI, and McGee.

The Government contends the court was correct in restricting both cross-examinations.  As to the alleged firearms violations, the Government asserts that Jackson "attempted to drag the jury into a Stygian quagmire by claiming the existence of some deal struck by [it], the FBI, the prosecutor, or some state agency, to forego prosecution of McGee, all in the face of no proof whatsoever."  The Government maintains that no such deal was ever made.  Furthermore, the Government points out

---

[39]Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

[40]United States v. Tansley, 986 F.2d 880, 886 (5th Cir. 1993).

[41]Jackson cites to United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998), reversed en banc, 165 F.3d 1297 (10th Cir. 1999) to argue that Darrious' testimony was obtained in violation of 18 U.S.C. § 201(c)(2) (bribery of public officials and witnesses).  This has never been the law in this circuit.  See United States v. Haese, 162 F.3d 359, 366-67 (5th Cir. 1998) (upholding a prosecutor's grant of leniency to witnesses in exchange for their truthful testimony).

16

that failure to disclose any such deal would violate its obligations under Giglio v. United States.[42] Additionally, the Government insists the cross-examinations were properly limited, as (1) extrinsic evidence of specific instances of conduct could not be used to attack the witness' credibility inasmuch as none of the Rule 608 exceptions applied;[43] and (2) the attempted cross-examinations were nothing more than an effort to "dirty" the witnesses and confuse the issues which is prohibited under Rule 403.

We find no error in the court's limitation of Jackson's cross examinations. There was no evidence of any deal between McGee and the Government. As such, the court did not improperly restrict cross examination on this matter.

Admission of Tangible Evidence

This court reviews evidentiary rulings for abuse of discretion and will reverse a district court's ruling only if it affects a substantial right of a party.[44]

Jackson contends the court abused its discretion in admitting the following items into evidence: (1) a video surveillance tape taken the day of the crimes and a still photograph (made from

---

[42]405 U.S. 150 (1972) (holding that if Assistant United States Attorney ("AUSA"), who first dealt with key Government witness, promised witness that he would not be prosecuted if he cooperated with the Government, such a promise was attributable to the Government, regardless of whether attorney had authority to make it, and nondisclosure of promise, which was not communicated to AUSA who tried the case, would constitute a violation of due process requiring a new trial).

[43]See FED. R. EVID. 608 (providing that specific instances of conduct, if probative of truthfulness or untruthfulness, may be inquired into on cross-examination). See also United States v. Clemons, 32 F.3d 1504 (11th Cir. 1994). The court held that an inquiry on cross-examination regarding the witness' previous use or sale of crack cocaine was inadmissable, as it "was neither probative of his truthfulness or his capacity to testify nor relevant to discovering the facts of this case." Id. at 1511.

[44]Caparotta v. Entergy Corp., 168 F.3d 754, 755-56 (5th Cir. 1999).

the video tape) depicting Darrious at a Sun, Louisiana, convenience store; (2) an audio tape and transcript of two 911 calls made by the victims following their escape from the trunk of the car; and (3) photographs from July 22, 1999, of one victim's facial injury and the other victim's blood-stained jeans and panties. He asserts that the video tape and still photograph actually contradicted Darrious' testimony, as the time stamp on the videotape placed him at the store twelve hours after the crime, making it too remote in time from the events it was offered to prove. Therefore, the evidence was not relevant, not authentic, and inadmissible. Even if "technical relevancy" were established, he maintains the court still abused its discretion, as this evidence was unduly prejudicial and its probative value was outweighed by the possibility that it would mislead the jury.[45]

Jackson similarly argues that the 911 tapes and transcript were cumulative, prejudicial, and "far more likely to inflame the jury's sympathy for the victims and cloud its dispassionate assessment of the real issue in this case — who the admitted perpetrator's companion was — than to establish the likelihood that [Jackson] was that companion." Finally, Jackson contends the court erred in admitting photographs of one victim's facial injury and the other victim's blood-stained garments. This evidence, he maintains, was inflammatory and not necessary to prove any issue in dispute as there was no factual disput e that one victim suffered facial injuries or that the abductors sexually assaulted both victims.

The Government maintains that the tape and transcript of the 911 calls, which were made within seconds of the girls' escape, were admissible exceptions to hearsay as (1) present sense

_____

[45]Id.

18

impressions under Rule 803(1), and (2) excited utterances under Rule 803(2).[46] It insists the statement was a contemporaneous present sense impression, as it was made within seconds of the girls' escape, and the subsequent physical and medical findings corroborate the declarant's statement that she and her cousin were kidnapped and raped.[47] The Government also contends that the calls were admissible as excited utterances made soon after the girls' three-and-one-half-hour kidnaping ordeal, which included an armed carjacking and multiple sexual assaults. Finally, the Government submits that there was no error in allowing the jury to view the transcript simultaneously with the playing of the 911 tape. In this circuit, "[t]ranscripts are admissible to aid the jury in understanding a recording, including cases in which 'the transcript may be helpful either to identify the speakers or to understand portions which are difficult to hear.'"[48]

The Government contends the convenience store video tape and still photograph placing Darrious Jackson in Sun, Louisiana, on the day of the offense are relevant, properly authenticated, admissible evidence, as (1) Darrious specifically identified himself as depicted; (2) the identification is bolstered by the victim's descriptions and Darrious' testimony as to the date and time of the crime

---

[46]For a statement to be admitted pursuant to the excited utterance exception to the hearsay rule, there must (1) "be some occurrence or event sufficiently startling to render normal reflective thought processes inoperative," and (2) "the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought." People of Territory of Guam v. Cepeda, 69 F.3d 369, 372 (9th Cir. 1995).

[47]See United States v. Hawkins, 59 F.3d 723, 729 (8th Cir. 1995) (holding that district court did not abuse its discretion by admitting a tape of a 911 emergency telephone call from defendant's wife reporting that he displayed a gun to her during a domestic dispute did not require exclusion as hearsay, as the tape constituted a present sense impression with sufficient contemporaneity to the underlying events and reliability evidenced by the wife's detailed description of the gun), vacated on other grounds, 516 U.S. 1168 (1996).

[48]United States v. Murray, 988 F.2d 518, 525 (5th Cir. 1993).

19

and of his and Jackson's flight to Louisiana with the girls; and (3) he denied ever having been at the store other than the instance when he appeared on the videotape. The Government asserts the erroneous date stamp goes to the weight and not the admissibility of the evidence.

As to the photographs and blood-stained clothing, the Government contends the probative value of this evidence far outweighs any danger of unfair prejudice. The Government contends the photograph shows facial injuries to one victim inflicted by Darrious, whose actions Jackson facilitated, and the clothing reflects Jackson's use of force and violence. The introduction of this evidence, the Government advances, enabled it to prove the elements of the charged offenses. The Government had to prove the carjacking was "by force and violence or by intimidation" and that "serious bodily injury" resulted.[49] It also had to prove the kidnaping was for "ransom, reward, or

---

[49] 18 U.S.C. § 2119. That section provides that:
    [w]hoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall--
    (1) be fined under this title or imprisoned not more than 15 years, or both,
    (2) if serious bodily injury (as defined in section 1365 of this title, including any conduct that, if the conduct occurred in the special maritime and territorial jurisdiction of the United States, would violate section 2241 or 2242 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and
    (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

otherwise."[50] Consequently, wrongful exclusion of this evidence would have entirely circumscribed the Government's ability to prove the elements of the charged offenses.[51]

The court did not commit reversible error in admitting the above-described evidence. We recognize that admission of the blood-stained clothing is a close call under Rule 403. Nevertheless, it was not an abuse of discretion in view of the overwhelming evidence of guilt. Moreover, in light of Jackson's contention that the girls did not suffer "serious bodily injury," the photographs and blood-stained clothing certainly assisted the Government in establishing key elements of its case.

Challenges to the Jury

To prevail on a claim that the court abused its discretion in denying challenges for cause to excuse prospective jurors, Jackson must show that the court's conclusion that the jurors in question could perform their duties as jurors was manifest error.[52]

A prospective juror may be excluded for cause when his views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath.[53]

---

[50]18 U.S.C. § 1201(A)(1). See e.g., United States v. Rivera, 83 F.3d 542, 546 (1st Cir. 1996) (holding that evidence of rape related to a critical element of the crime of carjacking — possession of a firearm — thus was admissible and was not unduly prejudicial when defense was based solely on theory that possession of firearm had not been proven beyond a reasonable doubt). See also United States v. McBryar, 553 F.2d 433, 434 (5th Cir. 1977) (holding that transportation of a kidnaping victim for the purpose of sexual gratification is sufficient to satisfy the requirement of the federal kidnaping statute that the person be held for ransom or reward or otherwise).

[51]See Jones v. United States, 119 S.Ct. 1215 (1999) (holding that provisions of the carjacking statute that establish higher penalties that may be imposed when the offense resulted in serious bodily injury or death set forth additional elements of offense, not mere sentencing considerations).

[52]United States v. Scott, 159 F.3d 916, 925 (5th Cir. 1998).

[53]Id.

Generally, it is error for the court to force a party to exhaust peremptory challenges on jurors who should have been excused for cause. Such a situation impairs a Defendant's right to exercise peremptory challenges and is reversible error without a showing of prejudice.[54] Under the Jury Selection and Service Act ("Act"), a federal court litigant has the right to a jury "selected at random from a fair cross section of the community."[55] "To establish a prima facie violation of the fair-cross-section requirement, the defendant must show that: (1) the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this under-representation is due to systematic exclusion of the group in the jury selection process."[56]

Jackson contends the jury was improperly constituted, thereby depriving him of his Fifth and Sixth Amendment rights to a fair and impartial jury. Specifically, he complains that (1) the venire did not include a fair cross-representation of the community — in particular, jurors of Jackson's age; and (2) the court erred in excusing or failing to excuse certain jurors for cause. Jackson's argument as to the construction of the venire must fail, as he cannot establish a prima facie violation of the Act. Age is not a characteristic which can define a distinctive group in the community for purposes of the fair-cross-section requirement.[57]

---

[54]United States v. Hall, 152 F.3d 381, 408 (5th Cir. 1998).

[55]28 U.S.C.§ 1861.

[56]United States v. McKinney, 53 F.3d 664, 671 (5th Cir. 1995).

[57]See Silagy v. Peters, 905 F.2d 986, 1010 (7th Cir. 1990) (holding that age is not a characteristic which can define a distinctive group for purposes of the fair-cross-section requirement) (citations omitted); Davis v. Greer, 675 F.2d 141, 146 (7th Cir. 1982) (holding that

22

Jackson additionally claims the court excluded two prospective black jurors who should have been allowed to serve and included a biased Caucasian male and female who should have been excused for cause. These flaws, he contends, require reversal and remand for a new trial. The Government contends there was no error in the court's exercise of exclusions or in the peremptory challenges. Jackson challenged juror fourteen because he had been a wrecker driver for law enforcement and knew many of the officers, though none of these acquaintances were called to testify. Following questions as to bias, the court declined to strike this juror for cause. Then, after exhausting his peremptory challenges, Jackson objected to the jury pool and to the Government's peremptory strike of the only juror under age twenty-five, to which no contemporaneous objection was made. Accordingly, Jackson has demonstrated no error in the jury selection process.

Constitutionality of 18 U.S.C. § 2119

Jackson contends that his conviction must be entirely reversed due to the district court's failure to dismiss the carjacking count under United States v. Lopez.[58] This circuit has firmly held that the federal carjacking statute is a proper exercise of Congressional authority under the Commerce Clause.[59] Accordingly, Jackson fails to establish an Equal Protection claim.

**CONCLUSION**

For the foregoing reasons, the decision of the district court is **AFFIRMED.**

---

"[y]oung people between the ages of 18 and 21 . . . are not a cognizable group or class") (citations omitted).

[58] 514 U.S. 549 (1995).

[59] See United States v. Coleman, 78 F.3d 154, 158 (5th Cir. 1996).

23